Charles C.H. Wu, SBN 166756
  cchwu@wclawyers.com
Vikram M. Reddy, SBN 228515
  vreddy@wclawyers.com
**WU & REDDY, A PROF. CORP.**
98 Discovery
Irvine, California 92618-3105
Telephone: (949) 251-0111

Attorneys for plaintiff Photoscience Japan Corp.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHOTOSCIENCE JAPAN CORP., a Japan corporation,<br><br>          Plaintiff,<br><br>vs.<br><br>PACIFIC ULTRAVIOLET INC., a Colorado corporation; FUGUI MENG a.k.a. MENG FUGUI, an individual; and DOES 1 through 10, inclusive,<br><br>          Defendants. | CASE NO. 2:20-cv-11013-MWF-E<br><br>**NOTICE OF MOTION AND MOTION OF PLAINTIFF PHOTOSCIENCE JAPAN CORP. FOR ENTRY OF DEFAULT JUDGEMENT AGAINST DEFENDANTS PACIFIC ULTRAVIOLET INC. AND MENG FUGUI; AND**<br><br>**DECLARATIONS OF KIYOMITSU K. TOMA AND CHARLES C.H. WU IN SUPPORT THEREOF**<br><br>**LOCAL RULES 55-1, 55-2**<br><br>**FED. R. CIV. P. 55**<br><br>Hon. Michael W. Fitzgerald<br><br>Date:    April 26, 2021<br>Time: 10:00 AM<br><br>Courtroom: 5A |

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

**TO THE COURT AND TO THE DEFENDANTS:**

PLEASE TAKE NOTICE that on April 26, 2021 at 10:00AM, or as soon thereafter as the matter may be heard in the Courtroom of Hon. Michael W. Fitzgerald, United States District Judge, located at Courtroom 5A of the First Street U.S. Courthouse, 350 W. 1st Street, Los Angeles, California 90012-4565, plaintiff PHOTOSCIENCE JAPAN CORP., a Japan corporation, (hereinafter, the "Plaintiff,") will, and hereby, does, move the Court for entry of default judgment against defendants PACIFIC ULTRAVIOLET INC., a Colorado corporation; and FUGUI MENG a.k.a. MENG FUGUI, an individual (collectively hereinafter, "Defendants.")

Plaintiff seeks a judgment for statutory damages pursuant to 15 U.S.C. § 1117(c) in the sum of $300,000, as well as costs in the amount of $592 as the prevailing party.

<u>L.R. 55-1</u>

In support of this motion ("Motion"), and in compliance with L.R. 55-1, Plaintiff further states as follows:

1. Defendants have failed to answer or otherwise appear in this case despite being properly served with a pre-litigation cease and desist letter, the Summons and Complaint, and as a result, had a default entered against them by the Deputy Clerk on January 19 and 22, 2021 respectively [Dkt. 20 and 23].

2. Defendants are not an infant or incompetent person or in the military service.

3. The Servicemembers Civil Relief Act (50 App. U.S.C. § 521) does not apply.

4. This Notice of Motion and Motion and all supporting papers attached thereto, have been served on Defendants in the manner set forth in the companion Certificate of Service.

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

5.    Plaintiff is entitled to judgment against Defendants based on Defendants' trademark infringement. Plaintiff seeks a judgment for statutory damages pursuant to 15 U.S.C. § 1117(c) in the sum of $300,000, as well as costs in the amount of $592 as the prevailing party.

6.    Plaintiff seeks that the Court issue a permanent injunction enjoining and restraining Defendants from using and infringing Plaintiff's trademark and committing acts of unfair competition and acts constituting false designation of origin.

7.    Plaintiff further seeks and order of the Court instructing Defendants to transfer the domain name "photoscienceuv.com" to Plaintiff, in order to prevent Defendants from re-opening this website in the future.

8.    This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the declarations and exhibits attached hereto, the pleadings, records and papers on file herein and such other matters and evidence as may be presented at or before the hearing.

Respectfully submitted,

**WU & REDDY, A PROF. CORP.**

Dated: February 26, 2021          By:   /s/ Charles C.H. Wu
                                         Charles C.H. Wu, Esq.
                                         Vikram M. Reddy, Esq.
                                  Attorneys for Plaintiff Photoscience Japan Corp.

iii                                    Case No. 2:20-cv-11013-MWF-E

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**
J:\Photoscience.1233\Pac Ultraviolet\Pleadings\Default Judgement\20210224 Mot for Default Judgment - Pacific UV (D).docx

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ......................................................................... v

INTRODUCTION ....................................................................................... 1

II.    STATEMENT OF FACTS ................................................................. 4

    A.    The Photoscience Mark.............................................................. 4

    B.    Defendants' Misappropriation of the Photoscience Mark................................. 6

    C.    C. Defendants' Trademark Infringement .................................... 7

    D.    D. Defendant's Intention and Default .......................................... 9

III.   LEGAL ARGUMENT ..................................................................... 11

A.    Plaintiff Has Satisfied All The Necessary Elements To Warrant A Default Judgment Being Entered Against Defendants................................................. 11

1.    Plaintiff's Complaint is Meritorious and Sufficient ................................. 12

2.    The Remaining *Eitel* Factors Have Also Been Satisfied ..................................... 13

IV.    PLAINTIFF IS ENTITLED TO MONETARY DAMAGES .............................. 16

    A.    Plaintiff Is Entitled to Statutory Damages Of At Least $ 6,000,000.00 Based on Defendants' Willful Trademark Infringement but is Requesting $300,000 .......... 16

    B.    Plaintiff Is Entitled To Costs ............................................................ 21

V.    PLAINTIFF IS ENTITLED TO DOMAIN-OWNERSHIP TRANSFER.................. 21

VI.    PLAINTIFF IS ENTITLED TO INJUNCTIVE RELEIF ....................................... 22

VII.    CONCLUSION ....................................................................................... 23

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

# TABLE OF AUTHORITIES

## STATUTES AND RULES

15 U.S.C. § 1114 ........................................................................... 4,10

15 U.S.C. § 1117 .................................................................. 16, 18, 21

15 U.S.C. § 1125(a)-(d) ............................................................. 4,10

Fed. R. Civ. P. 4(e)(2)(A)............................................................. 11

Fed. R. Civ. P. 12(a)(1)(A)(i) ...................................................... 11

Fed. R. Civ. P.55(a) .................................................................... 16

L.R. 55-1 .................................................................................. ii, 16

L.R. 55-2 .................................................................................. ii, 16

## CASES

Curtis v. Shinsachi Pharm., Inc.,

45 F. Supp. 3d 1190, 1203; C.D. Cal. (2014) ....................................... 16- 22

Eitel v. McCool,

782 F.2d 1470, 1472 (9th Cir. 1986)............................................... 11-16

Harman Int'l Indus. V. Pro Sound Gear, Inc.,

Case No. 2:17-cv-06650-ODW (FFMx) (C.D. Cal. Apr. 24, 2018) ......................... 19-20

Maier Brewing Co. v. Fleischmann Distilling Corp.,

390 F.2d 117, (9th Cir. 1968) ..................................................... 17

Microsoft Corp. v. Nop,

549 F. Supp. 2d 1233 (E.D. Cal. 2008) .............................................. 20-21

Mullane v. Central Hanover Trust Co.,

339 U.S. 306, 314 (1950). ........................................................ 16

Nintendo of Am., Inc. v. Dragon Pac. Int'l

v                                          Case No. 2:20-cv-11013-MWF-E

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

J:\Photoscience.1233\Pac Ultraviolet\Pleadings\Default Judgement\20210224 Mot for Default Judgment - Pacific UV (D).docx

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

40 F.3d 1007, 1011 (9th Cir. 1994) ................................................................... 17

TeleVideo Systems, Inc. v. Heidenthal,

826 F.2d 915, 917 (9th Cir. 1987) ................................................................... 15

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

## I.   INTRODUCTION

Plaintiff Photoscience Japan Corp. (hereinafter, "Plaintiff") is a corporation organized under the laws of Japan engaged in the business of, inter alia, manufacturing and selling ultraviolet equipment, including without limitation ultraviolet oxidation units, ultraviolet disinfection units, ultraviolet irradiation devices, and ultraviolet water treatment equipment.

Defendant Pacific Ultraviolet Inc (hereinafter, "Pacific UV") is a corporation organized under the laws of the State of Colorado, engaged in the business of selling many of the same products and accessories as Plaintiff, including without limitation, ultraviolet water treatment equipment products. Defendant Fugui Meng a.k.a. Meng Fugui (hereinafter, "Meng" and, collectively with Pacific UV, "Defendants") is an individual residing in the state of Colorado and is the founder and owner of Pacific UV.

Since at least November 1988, Plaintiff has used the mark "Photoscience," and since at least October 1995 Plaintiff has used the mark "Photoscience" in commerce.    The Photoscience trademark was registered with the U.S. Patent and Trademark Office on September 22, 2020 and bearing U.S. registration no. 6,156,757 (hereinafter the "Photoscience Mark"), and has been recognized as being among industry leaders in the ultraviolet treatment equipment industry. A copy of the Photoscience trademark registration is attached hereto and incorporated herein as **Exhibit "1."**

From 1988 to today, a span of 34 years, Plaintiff has sold and marketed its products under the Photoscience Mark, in particular, Plaintiff has used and widely publicized the

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

Photoscience Mark in connection with its ultraviolet water treatment equipment products. Representative examples of such products are attached hereto and incorporated herein as **Exhibit "2."**

During the same period of time, the Photoscience Mark has reached a certain level of recognition in the ultraviolet treatment equipment industry, leading the purchasers and prospective purchasers of its products associate the Photoscience Mark as originating from Plaintiff. Thus, the Photoscience Mark represents business property and goodwill owned by Plaintiff.

Defendants are in the market of selling many of the same products and accessories as Plaintiff. Therefore, Defendants are direct competitors of Plaintiff.

Last year, Plaintiff discovered that Defendants had been marketing ultraviolet water treatment equipment products under the "Photoscience" designation (hereinafter "Infringing Mark") and, further, that in or about late 2017, Defendants registered the infringing domain name "photoscienceuv.com," (hereinafter "Infringing Website") which directly incorporates Plaintiff's Photoscience Mark. As representative examples, true and correct printouts obtained from the Infringing Website depicting use of the Infringing Mark in connection with ultraviolet water treatment equipment products, are attached hereto and incorporated herein as **Exhibit "3.**

\  \  \

\  \  \

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

There is no plausible or justifiable reason why Defendants would register and utilize a domain name incorporating the Photoscience Mark, other than to illegally and improperly benefit from the goodwill Plaintiff has achieved with the Photoscience Mark.

At no point have Defendants notified or sought consent or authorization from Plaintiff to register the domain name for the Infringing Website, or to otherwise use Plaintiff's Photoscience Mark in any capacity.

On October 1, 2020 Plaintiff sent Defendants cease and desist Letters (hereinafter the "October Letters") advising Defendants of their infringement of the Photoscience Mark and of Plaintiff's intention to initiate litigation. Defendants failed to respond. The October Letters are attached hereto and incorporated herein as **Exhibit "4."**

On November 3, 2020, Plaintiff sent Defendants another set of cease and desist letters (hereinafter the "November Letters") to additional and different addresses, informing Defendants that it intended to move forward with litigation if Defendants failed to answer. A copy of the proposed complaint and related exhibits was attached to the November Letters. The November Letters are attached hereto and incorporated herein as **Exhibit "5."**

On November 4, 2020, Defendant Meng responded to the November Letter via e-mail, stating that the Infringing Website would be "closed very soon." Defendant Meng's e-mail is attached hereto and incorporated herein as **Exhibit "6."**

Defendant Meng's e-mail response demonstrates that that Defendant Meng, and Defendant Pacific UV, did in fact receive the November Letters and all subsequent

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**
J:\Photoscience.1233\Pac Ultraviolet\Pleadings\Default Judgement\20210224 Mot for Default Judgment - Pacific UV (D).docx

communication that occurred. This, as discussed below, further indicates that the Defendants had notice and thus, due process was met.

Following Defendant Meng's e-mail response, Plaintiff attempted several times to continue communication and resolve the matter, but Defendants failed to respond.

On December 3, 2020, Plaintiff filed a Complaint [Dkt. 1] for Federal Trademark Infringement (15 U.S.C. § 1114); Federal Unfair Competition and False Designation of Origin (15 U.S.C. § 1125(a), (d)); Trademark Dilution (15 U.S.C. § 1125(c)); Unfair Competition Under California Business and Professions Code §§ 17200, et seq., and 17500; Trademark Infringement Under California State Common Law, Declaratory Judgment, and Accounting.

Plaintiff, through its process server, personally served the Summons and Complaint on Defendants on December 17, 2020.

On January 18, 2021, Plaintiff filed a Request for Entry of Default against Defendants on the ground that Defendants failed to appear or otherwise respond to the initial Complaint within the time prescribed by the Federal Rules of Civil Procedure. Default was entered against Defendants Pacific UV and Meng on January 19 and 22, 2021, respectively. [Dkt. 20 and 23]

## II.    STATEMENT OF FACTS

A. The Photoscience Mark

Plaintiff owns and has used the Photoscience Mark, U.S. Trademark Registration No.

NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT

6,156,757 since at least November 1988, a period of 34 years. During this same period through today, Plaintiff has sold and marketed Plaintiff's products bearing the Photoscience Mark.

During this 34-year span, Plaintiff has expended substantial time, money and efforts in developing and promoting the Photoscience Mark, and has used and widely publicized the Photoscience Mark in connection with ultraviolet products including ultraviolet water treatment equipment. See **Exhibit "2"** attached hereto and incorporated herein.

Plaintiff's continuous hard-work and efforts in developing high-quality products and promoting the Photoscience Mark over the course of nearly three and a half decades, have paid off, as Plaintiff has achieved a certain level of recognition in the ultraviolet treatment equipment industry and Plaintiff's products have been recognized as being among industry leaders.

Plaintiff's status in the ultraviolet water treatment equipment market coupled with Plaintiff's significant efforts in marketing the Photoscience Mark leads Plaintiff to believe purchasers and potential purchasers in the ultraviolet water treatment equipment market associate products bearing the Photoscience Mark as originating from Plaintiff. Thus, Plaintiff believes that consumers in this market, have learned to associate the Photoscience Mark with the specific quality of Plaintiff's products, which, as mentioned above, are recognized among industry leaders.

As a result of said association by purchasers and potential purchasers, the Photoscience Mark represents business property and goodwill owned by Plaintiff.

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

## B. Defendants' Misappropriation of the Photoscience Mark

Defendant Pacific UV is a direct competitor to Plaintiff and sells many of the same replacement parts/products and accessories as Plaintiff, including but not limited to ultraviolet water treatment equipment products. Defendant Meng is the principal and incorporator of Defendant Pacific Ultraviolet. As explained in further detail below, Defendants begun to use the Infringing Mark, which is Identical to the Photoscience Mark, and the Infringing Website only in recent years, when Plaintiff and its Photoscience Mark had already achieved recognition within the industry.

In fact, since about late 2017, Defendants utilized, among others, the Infringing Website which contains a domain name (**photoscienceuv**.com) directly incorporating Plaintiff's Photoscience Mark, to market and sell their products. The domain name of the Infringing Website was registered by Defendants in or about late 2017. An excerpt from the Infringing Website confirming the website is owned and/or operated by Defendant Pacific Ultraviolet is attached hereto and incorporated herein as **Exhibit "7."**

Further, Defendants have surreptitiously taken steps to market and sell ultraviolet water treatment equipment products and related products under the designation "Infringing Mark", which is identical to Plaintiff's Photoscience Mark. See **Exhibit "3"** for representative examples, true and correct printouts obtained from the Infringing Website depicting use of the Infringing Mark in connection with ultraviolet water treatment equipment products.

Plaintiff further believes that Defendants' products incorporating the Infringing Mark are not made to the same standards as those of Plaintiff.

Plaintiff has been using the Photoscience Mark since 1988. Defendants, on the other hand, only recently started using the Infringing Mark and registered the Infringing Website domain name.

Defendants never notified or sought consent or authorization from Plaintiff to register the domain name for the Infringing Website, or to otherwise use Plaintiff's Photoscience Mark in any capacity.

Given the uniqueness of the Photoscience Mark there is no plausible or justifiable reason why Defendants would register and utilize a domain name incorporating the Photoscience Mark, other than to improperly benefit from the goodwill Plaintiff has achieved in the Photoscience Mark

### C. Defendants' Trademark Infringement

Defendants have been using, without authorization, the Infringing Mark which is identical to the Photoscience Mark, in connection with the advertising, promotion and sale of products which are the same in nature as those advertised, promoted and sold by Plaintiff. Additionally, Defendants have been using the Infringing Website, which incorporates the Photoscience Mark, in connection with the advertisement, promotion, and sale of such products.

Defendants' unauthorized usage of a mark identical to the Photoscience Mark as well

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**
J:\Photoscience.1233\Pac Ultraviolet\Pleadings\Default Judgement\20210224 Mot for Default Judgment - Pacific UV (D).docx

as their usage of a website incorporating the Photoscience Mark in its name, and in connection with ultraviolet water treatment equipment replacement parts/products, is likely to cause confusion, mistake or deception as to the source, affiliation, connection or association of Defendants' products and services with those of Plaintiff.

Said confusion, deception and/or mistake includes, without limitation, confusion, deception and/or mistake as to any affiliation Defendants' products and websites have with Plaintiff's products.

This is in total disregard of Plaintiff's rights, as the owner of the Photoscience Mark and the goodwill associated therewith.

Defendants conduct was deliberate and intended to confuse and deceive the public as to the source, origin and identity of their goods bearing the Infringing Mark and to injure Plaintiff and reap the benefit of Plaintiff's goodwill associated with the Photoscience Mark, to cause consumer confusion, and to divert sales away from Plaintiff, and thus constitutes willful infringement of the Photoscience Mark.

Even after responding to Plaintiff's November Letters, Defendants continued to market their products under the Infringing Mark on websites other than the Infringing Website. Namely, websites domiciled in China. This conduct is further indication that Defendants' conduct is willful and deliberate because Defendants were informed of their infringement of Plaintiff's Photoscience Mark and, further, indirectly acknowledged such infringement by stating they would close the Infringing Website immediately after receiving the November Letters. Despite this action, Defendants continued to knowingly infringe the

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

Photoscience Mark and, additionally, as detailed below, did not respond to any subsequent communication by Plaintiff, including failing to appear in the present litigation.

As a direct and proximate result of Defendants' wrongful acts Defendants have obtained gains, profits, and other unfair advantages in an amount that is not presently known to Plaintiff.

As a direct and proximate result of Defendants' willful and unlawful conduct, Plaintiff has been injured and will continue to suffer injury to its business and reputation unless Defendants, are restrained by this Court from further infringement of the Photoscience Mark.

Plaintiff has no adequate remedy at law and unless enjoined by the Court, Defendants, shall continue to cause irreparable damage and injury to Plaintiff.

D. Defendants' Intention and Default

On October 1, 2020 Plaintiff sent Defendants Cease and Desist letters (October Letters) advising Defendants of their infringement of the Photoscience Mark and of Plaintiff's intention to initiate litigation. Defendants failed to respond. On November 3, 2020, Plaintiff sent Defendants another Cease and Desist letter (November Letters) at a different address, informing Defendants that it intended to move forward with litigation if Defendants failed to answer. A copy of the proposed complaint and related exhibits was attached to the November Letters. See, respectively **Exhibit "4" and Exhibit "5"** attached hereto and incorporated herein.

On November 4, 2020, Defendant Meng responded to the November Letter via e-mail, stating that the Infringing Website would be "closed very soon." See **Exhibit "6"** attached hereto and incorporated herein.

Defendant Meng's e-mail response demonstrates that both Defendants had been made aware of their infringement, since Defendant Meng is the principal of Defendant Pacific UV.

To this point, following Defendant Meng's email response, Plaintiff, through counsel of record, informed Defendants that in order to avoid litigation a settlement agreement would be necessary. This communication was sent as an e-mail response to Defendant Meng's November 4, 2020 e-mail on the same date and is attached hereto and incorporated herein as **Exhibit "8."**

Two days later, on November 6, 2020, having received no response from Defendant Meng, Plaintiff, through his counsel of record, sent a follow-up e-mail, attached hereto and incorporated herein as **Exhibit "9."**

On November 10, 2020, again having received no response from Defendant Meng, Plaintiff, through his counsel of record, sent a final follow-up e-mail advising Defendants that if no answer was received by November 11, 2020, Plaintiff would move forward with filing its complaint against Defendants. A copy of the complaint was once again attached to the e-mail. The November 10, 2020 e-mail is attached hereto and incorporated herein as **Exhibit "10."**

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

On December 3, 2020, Plaintiff filed its Complaint against Defendants, Federal Trademark Infringement (15 U.S.C. § 1114); Federal Unfair Competition and False Designation of Origin (15 U.S.C. § 1125(a), (d)); Trademark Dilution (15 U.S.C. § 1125(c)); Unfair Competition Under California Business and Professions Code §§ 17200, et seq., and 17500; Trademark Infringement Under California State Common Law, Declaratory Judgment, and Accounting.

On or about December 17, 2020, pursuant to Fed. R. Civ. P. 4(e)(2)(A), Plaintiff, through its process server, personally served a copy of the Summons and Complaint on Defendant Pacific Ultraviolet. A copy of said Proof of Service was filed with the Court on January 8, 2021, a true and correct copy of which is attached hereto and incorporated herein as **Exhibit "11"**.

On January 18, 2021, Plaintiff filed a Request for Entry of Default against Defendant Pacific UV and against Defendant Meng on the ground that Defendants failed to appear or otherwise respond to the initial Complaint within the time prescribed by Fed. R. Civ. P. 12(a)(1)(A)(i). Default was entered against Defendants Pacific UV and Meng on January 19 and 22, 2021, respectively. A true and correct copy of the entered Default is attached hereto and fully incorporated herein as **Exhibit "12."**

## III.   LEGAL ARGUMENT

A.   <u>Plaintiff Has Satisfied All the Necessary Elements to Warrant A Default Judgment Being Entered Against Defendants</u>

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

The Ninth Circuit has set forth the following factors to determine whether to grant default judgment:

(1) the substantive merits of plaintiff's complaint;

(2) the complaint's sufficiency;

(3) the amount of money at stake;

(4) the possibility of prejudice to plaintiff if relief is denied;

(5) the possibility of dispute as to any material facts;

(6) whether default resulted from excusable neglect; and

(7) the policy of the Federal Rules favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986.) (the "*Eitel* factors") In the current matter, all weigh in favor of granting Plaintiff a default judgment against Defendants.

1.   <u>Plaintiff's Complaint is Meritorious and Sufficient</u>

In its Complaint, Plaintiff sets forth that it has owned and used the Photoscience Mark since 1988 and has used the Photoscience Mark in commerce since 1995. Plaintiff's Photoscience Mark has gained recognition over the years and purchasers or potential purchasers of ultraviolet water treatment equipment and related products have come to associate the Photoscience Mark with Plaintiff's products, meaning products built to certain quality standards and originating from Plaintiff.

Defendant Pacific UV is a direct competitor of Plaintiff and is engaged in the business of selling many of the same replacement parts/products and accessories as Plaintiff,

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

including without limitation, ultraviolet water treatment equipment products. Defendant Meng is the principal of Defendant Pacific UV.

In or about late 2017, Defendants registered a domain name which included the Photoscience Mark. The Infringing Website is used by Defendants to advertise, promote and sell ultraviolet water treatment equipment.

Further, Defendants recently started using a mark that is identical to the Photoscience Mark on some of their products.

These willful acts by Defendants infringe on Plaintiff's rights as the owner of the Photoscience Mark and have caused irreparable harm to Plaintiff.

Thus, Plaintiff's complaint satisfies the first and second *Eitel* factors.

### 2. The Remaining *Eitel* Factors Have Also Been Satisfied

a. Amount at Stake: Under the third *Eitel* factor, the Court shall consider the amount of money at stake. In this matter, Plaintiff is seeking statutory damages in the amount of $300,000.00. This amount is reasonable and based on Defendants' trademark infringement. In fact, Defendants infringed the Plaintiff's Photoscience Mark in at least 40 separate and documented instances, selling products on the Infringing Website that were marked with the Infringing Mark. These products fall within 2 types of product categories: UV bulbs and UV ballasts. A true and correct copy of Defendants' website showing the 40 infringing products is attached hereto and incorporated herein as **Exhibit "13."**

Further, Defendants registered and remain the owners of the Infringing Website, which incorporates the Photoscience Mark in its domain name. This constitutes a separate infringement from the above two categories. (See **Exhibit "7."**)

As discussed throughout this motion, Plaintiff is recognized as an industry leader in the market of ultraviolet water treatment equipment products. Further, Plaintiff has been using the Photoscience mark for several years.

Defendants' conduct constitutes an attempt to reap the benefit of Plaintiff's hear-earned goodwill. Therefore, Defendants' conduct is willful.

As such, Plaintiff's requested statutory damages are reasonable.

b. Possibility of Prejudice: The fourth *Eitel* factor is to determine if Plaintiff will suffer prejudice if default judgment is not entered. In this case, the answer is a resounding yes. Plaintiff has expended significant resources over nearly three-and-a-half decades in the promotion of the Photoscience Mark. The Photoscience Mark is recognized by purchasers and potential purchasers of UV water treatment products as being associated with Plaintiff's products and their quality. Defendants' products are not built to the same standard of quality and therefore, having inferior quality products on the market bearing Plaintiff's Photoscience Mark is damaging to Plaintiff. As such, Plaintiff would suffer prejudice if the motion were denied because he has no other recourse for recovery.

Further, as discussed above, Defendants continue to do business and using the Infringing Marks in foreign countries, despite their US website being closed. Without an

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

J:\Photoscience.1233\Pac Ultraviolet\Pleadings\Default Judgement\20210224 Mot for Default Judgment - Pacific UV (D).docx

1  Order of this Court commanding that Defendants transfer the Infringing Website's domain

2  to Plaintiff nothing will prevent Defendants from re-opening Infringing Website and

3  continue to infringe on Plaintiff's Photoscience Mark.

4

5

6      c. Possibility of Dispute: The fifth *Eitel* factor requires the court to consider the

7  possibility as to whether any material fact(s) in the case are disputed. Defendants were

8  served with the well-pled civil complaint and did not respond. Upon entry of default, all

9  well-pled facts in the complaint are taken as true except for those relating to damages.

10  *TeleVideo Systems, Inc. v. Heidenthal,* 826 F.2d 915, 917 (9th Cir. 1987). Since Plaintiff's

11  factual allegations must be deemed true, no genuine dispute exists as to any material facts.

12

13

14

15  d. Possibility of Excusable Neglect: The sixth *Eitel* factor requires the court to consider the

16  possibility as to whether Defendant's default resulted from excusable neglect. Such is not

17  the case in this lawsuit. Plaintiffs sent the October Letters and the November Letters to

18  Defendants. See **Exhibits "4" and "5."** As detailed above, Defendant Meng responded via

19  e-mail to the November Letters, however, failed to respond to any subsequent

20  communication sent by Plaintiff's counsel of record. However, Defendant Meng's response

21  to the November Letters indicates that Defendant Meng and, by implication Defendant

22  Pacific UV, of which Defendant Meng is principal, had been made aware of their

23  infringement.

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

Defendants were subsequently served with the well-pled civil complaint and did not respond. Furthermore, the Clerk entered default against Defendants on January 18, 2021.

Due process requires the defendant be given notice of the pendency of the action and be afforded an opportunity to present its objections before a final judgment is rendered. *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314 (1950). Here, Defendants were given ample notice and to date, Defendants have not entered an appearance.

e. Policy for Decision on the Merits:    The seventh and final *Eitel* factor calls for the Court to account for the Federal Rules' preference that disputes be decided on the merits. Notwithstanding, such an option is not warranted or feasible in this case. As stated above, Defendants have been accorded due process and have voluntarily chosen not to respond to the Complaint. The Clerk entered default against Defendants on January 18, 2021 See **Exhibit "12."** Furthermore, Fed. R. Civ. P.55(a) and L.R. 55-1 to 55-2 do allow for default judgments to be entered by the Court.

## IV. PLAINTIFF IS ENTITLED TO MONETARY DAMAGES

A. Plaintiff Is Entitled to Statutory Damages Of At Least $ 6,000,000.00

Based on Defendants' Willful Trademark Infringement but is Requesting $300,000

Defendants' failure to appear has made it impossible for Plaintiff to prove actual damages, because none of the records containing actual sales figures have been made available to Plaintiff. For this reason, Plaintiff must rely on statutory damages.

J:\Photoscience.1233\Pac Ultraviolet\Pleadings\Default Judgement\20210224 Mot for Default Judgment - Pacific UV (D).docx

1
2
3
4
5
6

Under 15 U.S.C. § 1117(c), the court may award statutory damages between $1,000 and $200,000 per counterfeit mark per type of goods or services sold or offered for sale in the case of trademark infringement, and, if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

7
8
9
10
11
12
13
14
15
16
17

In determining the amount of statutory damages to award, the Ninth Circuit has emphasized that the purpose of statutory damages is to make "deliberate acts of trademark infringement unprofitable." *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 123 (9th Cir. 1968). Thus, statutory damages "serve a generally different purpose than actual damages-that is, they serve to punish and deter infringement." *Curtis v. Shinsachi Pharm., Inc.,* 45 F. Supp. 3d 1190, 1203; C.D. Cal. (2014), citing *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994).

18
19
20
21
22
23
24

In this case, Plaintiff has identified 40 separate products bearing the Infringing Mark, advertised on Defendants' Infringing Website. Thus, there are 40 distinct instances of infringement of Plaintiff's Photoscience Mark on Defendants' Infringing Website. These products fall within two general product type categories: UV bulbs and UV Ballasts (See **Exhibit "13."**)

25
26
27
28

Further, Plaintiff has also identified the infringing domain name "photoscienceuv.com" which is registered in Defendants name. (See **Exhibit "7."**)

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

Thus, Plaintiff has identified at least three separate violations of Plaintiff's Photoscience Mark.

As detailed above, Defendants' acts of infringement were willful. Plaintiff, in fact, had been long established as a leader in the industry of ultraviolet water treatment equipment products, and Plaintiff's Photoscience Mark had already become synonymous with high-quality products, decades before Defendants registered the Infringing Website and began using the Infringing Mark.

As such, Defendants' use of the Infringing Mark and registration of the Infringing Website constitute willful and deliberate attempts by Defendants to reap the benefits of Plaintiff's market status and the goodwill of the Photoscience Mark.

Thus, pursuant to 15 U.S.C. § 1117(c)(1) Plaintiff would be entitled to $2,000,000 per type of goods (3) totaling $6,000,000. However, Plaintiff is reasonably only requesting $100,000 in statutory damages per infringing mark per type of goods, which equates to $100,000 x 3 = $300,000.

Plaintiff is entitled to such damages in order to recover from the losses caused by Defendants' trademark infringing acts, which, among other things, have damaged Plaintiff's goodwill by introducing inferior quality products on the market bearing the Infringing Mark.

Plaintiff's request is reasonable as illustrated by the following cases.

In *Curtis v. Shinsachi Pharm., Inc.,* Curtis requested and the Central District Court of California granted $100,000 per website violation, after Defendants registered marks

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

previously used in commerce by Curtis and registered domain names incorporating such marks. Like here, defendants in this case defaulted and the court entered default against them. *Curtis* at 1196.

The facts in *Curtis* are very similar to the facts in this case because the defendants' conduct was clearly willful in registering infringing domain names and defendants also failed to appear.

The California Central District Court's reasoning in granting the requested statutory damages, was that Curtis requested less than the statutory maximum of $200,000 per non-willful infringement and the Defendants' conduct in the matter "smacked of bad faith" which would have allowed Curtis to request the much higher damages warranted for willful infringement ($6,000,000). *Curtis* at 1203. Like here, Curtis only requested damages for $300,000. Thus, the court found that Curtis' request of $100,000 per infringement appeared to be reasonable. *Id.*

As described above, here, Plaintiffs, similar to *Curtis,* have also requested less than the statutory maximum for non-willful infringement, even though Defendants' conduct is willful, deliberate and intentional. Further, while Curtis sued based on a mark that she had merely used in commerce, *i.e.* she had never registered, here, Plaintiff not only has used the Photoscience Mark for over thirty years, but also has also registered the Photoscience Mark with the U.S. Patent and Trademark Office.

In another recent case in the Central District court of California, *Harman Int'l Indus. V. Pro Sound Gear, Inc.,* Harman brought an action alleging, among other things, trademark

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

infringement against Pro Sound Gear, who was selling products bearing Harman's registered marks through its website, even though defendant was not an authorized dealer of Harman. *Harman* at 2.

Similar herein, defendant Pro Sound Gear failed to appear in the action and the court entered a default against defendant. *Id.* at 3.

Subsequently, Harman filed a motion for default judgment and requested the statutory maximum of $200,000, arguing that because defendant failed to participate in the litigation, it was unable to offer evidence of the "monetary harm it may have suffered as a result of Pro Sound's infringing activities.". *Id.* at 12. The court ultimately awarded $100,000 for each of the infringing marks. *Id.* at 13.

Again, the defendants in *Harman*, just like the Defendants in the present matter, had defaulted. Further, the conduct of the defendants in *Harman* was also characterized as willful. Once again, like in *Curtis*, the California Central District Court in *Harman* found that an award of $100,000 per infringement was reasonable.

In another similar-fact trademark infringement case where defendants had also defaulted, *Microsoft Corp. v. Nop*, plaintiff requested, and the Eastern District of California Court granted, $100,000 per infringing mark. Here, the court noted that defendants failed to appear, despite having had ample notice of plaintiff's intent to pursue litigation. This had rendered a calculation of exact damages impossible, and, further, that the provision on statutory damages had been added precisely because counterfeiter's records are often non-existent or deceptively kept. *Microsoft* at 1238.

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

J:\Photoscience.1233\Pac Ultraviolet\Pleadings\Default Judgement\20210224 Mot for Default Judgment - Pacific UV (D).docx

Similar to the *Microsoft* case, in the present matters Defendants had ample notice of Plaintiffs intention to pursue litigation and, additionally, had been provided with a copy of the proposed complaint as early as November, 2020. (See **Exhibit "5."**) Defendants were aware of the proposed complaint as evidenced by Defendant Meng's reply to the November Letters. (See **Exhibit "6."**) Thus, like in *Microsoft,* Defendants' willful default is the reason calculations of actual damages has been rendered impossible and an award of $300,000 statutory damages is reasonable under the facts.

Based on the foregoing reasons, Plaintiff believes that an award of $100,000 per infringement, totaling $300,000 is reasonable under 15 U.S.C. § 1117(c).

### B. Plaintiff Is Entitled to Costs

Plaintiff is further entitled to collect the following court costs that Plaintiff has incurred in this action totaling $592, based on the court filing fee of $402 and the process server's fee of $190, as set forth in the itemized costs summary attached hereto and incorporated herein as **Exhibit "14,"** which include fees incurred for, inter alia, complaint filing fee, service of process fees, and postage.

### V. PLAINTIFF IS ENTITLED TO DOMAIN-OWNERSHIP TRANSFER

Plaintiff seeks that the Court order Defendants to transfer the property of the domain name "**photoscienceuv.com,**" which incorporates the Photoscience Mark to Plaintiff. Although Defendants are currently not operating the website, nothing is currently

preventing Defendants from choosing to re-open the Infringing Website and continue to due business through it. Because the Infringing Website itself contains the Photoscience Mark in its name, it will be inevitable that any product sold through the Infringing Website will generate confusion in consumers as to the origin of the product. Further, the mere operation of the Infringing Website by Defendants, who are direct competitors of Plaintiff, is infringing upon Plaintiff's Photoscience Mark.

In *Curtis,* the court was presented with a similar question, where Defendants were operating websites that incorporated marks which defendants did not own. *Curtis* at 1203. The court found that since defendants did not own valid marks represented by the registered domain names, there was "no lawful reason why they could continue to own them." *Id.* Further, the past-actions of defendants indicated that "they would likely continue to engage in bad-faith, disparaging conduct." *Id.* Therefore, the court granted the order requesting that defendants transfer domain ownership to Curtis.

The above-mentioned facts, represent a situation which is very similar to that in the present case. As such, Plaintiff seeks that the Court enter an order requesting that Defendants transfer the ownership of the domain **"photoscienceuv.com."**

## VI. PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF

Plaintiff seeks that the Court issue an injunction enjoining and restraining Defendants from infringing Plaintiff's trademark and committing acts of unfair competition and acts constituting false designation of origin. The issuing of such injunction constitutes the only

NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT

J:\Photoscience.1233\Pac Ultraviolet\Pleadings\Default Judgement\20210224 Mot for Default Judgment - Pacific UV (D).docx

means for Plaintiff to obtain relief, as Defendants will otherwise continue to infringe upon Plaintiff's Photoscience Mark.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests Judgment in its favor in the principal amount of $300,000.00 in statutory damages, $592 in costs, and an order transferring the property of the domain "photoscienceuv.com" to Plaintiff.    Plaintiff is also entitled to injunctive relief to prevent further damaging acts of trademark infringement and unfair competition by Defendants.

Respectfully submitted,

WU & REDDY, APC

Dated: February 26, 2021                    By: /S/ Charles C.H. Wu
                                                 Charles C.H. Wu
                                                 Vikram M. Reddy
                                            Attorneys for Plaintiff

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

## DECLARATION OF KIYOMITSU K. TOMA

I, Kiyomitsu K. Toma, declare as follows:

1.  The facts set forth in this declaration are personally known to me and I have first-hand knowledge of these facts.    If called upon to testify during the course of this action, I could and would competently testify thereto under oath.

2.  I am the president of Photoscience Japan Corp., a corporation organized under the laws of Japan (hereinafter "Photoscience") engaged in the business of, inter alia, manufacturing and selling ultraviolet equipment, including without limitation ultraviolet oxidation units, ultraviolet disinfection units, ultraviolet irradiation devices, and ultraviolet water treatment equipment.

3.  Since at least November 1988, Photoscience has used the trademark "Photoscience."

4.  Since at least October 1995, Photoscience has used the mark "Photoscience" in commerce.

5.  The Photoscience trademark was registered with the U.S. Patent and Trademark Office on September 22, 2020 and bearing U.S. registration no. 6,156,757 (hereinafter the "Photoscience Mark"). A copy of the Photoscience trademark registration is attached hereto and incorporated herein as **Exhibit "1."**

6.  Photoscience has expended substantial time, money and efforts in developing and promoting the Photoscience Mark.

7.  From 1988 through today, a span of 34 years, Photoscience has sold and marketed its products under the Photoscience Mark. In particular, Photoscience has used and widely

publicized the Photoscience Mark in connection with its ultraviolet water treatment equipment products. Representative examples of such products are attached hereto and incorporated herein as **Exhibit "2."**

8. During the same period of time, Photoscience has reached a certain level of recognition in the ultraviolet treatment equipment industry and Photoscience's products have been recognized as being among industry leaders.

9. Photoscience's status in the ultraviolet water treatment equipment market coupled with Photoscience's significant efforts in marketing the Photoscience Mark cause that the purchasers and prospective purchasers of products bearing the Photoscience Mark associate such products as originating from Photoscience. Thus, consumers and commercial buyers in the market for ultraviolet water treatment equipment products, have learned to associate the Photoscience Mark with the specific quality of Photoscience's products.

10. As a result of said association by purchasers and potential purchasers, the Photoscience Mark represents business property and goodwill owned by Photoscience.

11. Pacific Ultraviolet Inc (hereinafter, "Pacific UV") is a corporation organized under the laws of the State of Colorado and a direct competitor of Photoscience. In fact, Pacific UV is engaged in the business of selling many of the same replacement parts/products and accessories as Photoscience, including without limitation, ultraviolet water treatment equipment products.

12. From reviewing the State of Colorado Secretary of State's online records, I understand that defendant Fugui Meng a.k.a. Meng Fugui (hereinafter, "Meng" and,

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

collectively with defendant Pacific UV, "Defendants") is an individual residing in the state of Colorado and is the founder and owner of Pacific UV.

13.   Last year, myself and my staff discovered that Defendants had surreptitiously taken steps to market and sell ultraviolet water treatment equipment products and related products under the name of "Photoscience" (hereinafter, the "Infringing Mark"), which is identical to Photoscience's Photoscience Mark. As representative examples, true and correct printouts obtained from the Infringing Website depicting use of the Infringing Mark in connection with ultraviolet water treatment equipment products, is attached hereto and incorporated herein as **Exhibit "3."**

14.   Photoscience believes that Defendants' products incorporating the Infringing Mark are not made to the same standards as those of Photoscience.

15.   Last year, Photoscience also discovered that Defendants were utilizing the website (**www.photoscienceuv.com**) (hereinafter 'Infringing Website'), containing a domain name (**photoscienceuv.com**) which directly incorporates Photoscience's Photoscience Mark, to market and sell ultraviolet water treatment equipment products and related products, which are in direct competition with Photoscience's products. An excerpt from the Infringing Website confirming the website is owned and/or operated by Defendants is attached hereto and incorporated herein as **Exhibit "7."**

16.   I am informed that the domain of the Infringing Website was registered by Defendants in or about late 2017.

17.   At no point did Defendants notify or seek consent or authorization from

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

J:\Photoscience.1233\Pac Ultraviolet\Pleadings\Default Judgement\20210224 Mot for Default Judgment - Pacific UV (D).docx

Photoscience to register the domain name for the Infringing Website, or to otherwise use Photoscience's Photoscience Mark in any capacity.

18.   There is no plausible or justifiable reason why Defendants would register and utilize a domain name incorporating the Photoscience Mark, other than to improperly benefit from the goodwill Photoscience has achieved in the Photoscience Mark.

19.   As previously described, Photoscience owns and has used the Photoscience Mark containing U.S. Registration No. 6,156,757 since at least November 1988. Photoscience has used the Photoscience Mark in commerce since at least October 1995. During this same period approximately through today, Photoscience has sold and marketed Photoscience's products bearing the Photoscience Mark. Defendants, on the other hand, only recently started using the Infringing Mark and registered the Infringing Website domain name.

20.   Photoscience has reached a certain level of recognition in the ultraviolet treatment equipment industry. Photoscience's products have been recognized as being among industry leaders, leading consumers to associate products bearing the Photoscience Mark as products of certain quality and originating from Photoscience.

21.   On the other hand, Defendants' products are not built to the same quality standards as Photoscience's

22.   Defendants' unauthorized usage of the Infringing Mark, which is identical to the Photoscience Mark, as well as their usage of the Infringing Website incorporating the Photoscience Mark in its name, and in connection with ultraviolet water treatment equipment products, is likely to cause confusion, mistake or deception as to the source,

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

affiliation, connection or association of Defendants' products and services with those of Photoscience.

23.  Said confusion, deception and/or mistake includes, without limitation, confusion, deception and/or mistake as to any affiliation Defendants' products and websites have with Photoscience's products.

24.  This is in total disregard of Photoscience's rights, as the owner of the Photoscience Mark and the goodwill associated therewith.

25.  Defendants conduct was deliberate and intended to confuse and deceive the public as to the source, origin and identity of their goods bearing the Infringing Mark and to injure Photoscience and reap the benefit of Photoscience's goodwill associated with the Photoscience Mark, to cause consumer confusion, and to divert sales away from Photoscience, and thus constitutes willful infringement of the Photoscience Mark.

26.  Defendants' wrongful act have caused my company to lose profits and market share.

27.  As a direct and proximate result of Defendants' willful and unlawful conduct, Photoscience has been injured and will continue to suffer injury to its business and reputation unless Defendants, are restrained by this Court from further infringement of the Photoscience Mark.

28.  Photoscience has no adequate remedy at law and unless enjoined by the Court via a permanent injunction against the Defendants. Otherwise, Defendants, shall continue to cause irreparable damage and injury to Photoscience.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 25, 2021, in Cerritos, California.

_____

Kiomitsu K. Toma, Declarant

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

# DECLARATION OF CHARLES C.H. WU

I, Charles C.H. Wu, declare as follows:

1. The facts set forth in this declaration are personally known to me and I have first-hand knowledge of these facts. If called upon to testify during the course of this action, I could and would competently testify thereto under oath.

2. I am an attorney licensed to practice law before the courts of the State of California, the U.S. District Court-Central District of California, the Ninth Circuit Court of Appeals, and the U.S. Supreme Court.   I am a principal of the law firm of Wu & Reddy, APC, counsel of record for plaintiff Photoscience Japan Corp., a Japan corporation (hereinafter, "Plaintiff.").

3. Our law firm has been the outside legal counsel for the Plaintiff since 2007, for 14 years.   During the 14 years of legal representation, I have come to the understanding that Plaintiff is engaged in the business of, inter alia, manufacturing and selling ultraviolet equipment, including without limitation ultraviolet oxidation units, ultraviolet disinfection units, ultraviolet irradiation devices, and ultraviolet water treatment equipment.

4. During the pre-filing stage of this case, from our law firm's due diligence investigation, Defendant Pacific Ultraviolet Inc (hereinafter, "Pacific UV") is a corporation organized under the laws of the State of Colorado, engaged in the business of selling many of the same UV products and accessories as Plaintiff, including without limitation, ultraviolet water treatment equipment products. From our due diligence, Defendant Fugui Meng a.k.a. Meng Fugui (hereinafter, "Meng" and, collectively with Pacific UV,

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

"Defendants") is an individual residing in the state of Colorado and is the founder and owner of Pacific UV.

5.  Our law firm is also the law firm that filed and obtained the Plaintiff's Photoscience Mark, USPTO registration no. 6,156,757 dated September 22, 2020.   From prosecuting the Photoscience Mark, our record shows that since at least November 1988, Plaintiff has been using the trademark "Photoscience." A copy of the Photoscience trademark registration is attached hereto and incorporated herein as **Exhibit "1."**

6.  Last year, Plaintiff informed our law firm that Defendants had surreptitiously taken steps to market and sell ultraviolet water treatment equipment products and related products under the name of "Photoscience" (hereinafter, the "Infringing Mark"), which is identical to Plaintiff's Photoscience Mark.   During the reviewing process of this matter, we gathered the evidence from the Infringing Website depicting use of the Infringing Mark in connection with ultraviolet water treatment equipment products. A true copy is attached hereto and incorporated herein as **Exhibit "3."**

7.  During our investigation, we also discovered that Defendants were utilizing the website (**www.photoscienceuv.com**) (hereinafter 'Infringing Website'), containing a domain name (**photoscienceuv.com**) which directly incorporates Plaintiff's Photoscience Mark, to market and sell ultraviolet water treatment equipment products and related products, which are in direct competition with Plaintiff's products. An excerpt from the Infringing Website confirming the website is owned and/or operated by Defendants is attached hereto and incorporated herein as **Exhibit "7."**

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**
J:\Photoscience.1233\Pac Ultraviolet\Pleadings\Default Judgement\20210224 Mot for Default Judgment - Pacific UV (D).docx

8. From our investigation, we are informed that the domain of the Infringing Website was registered and operated by Defendants in or about late 2017, more than three years ago.

9. During our review of this matter, at no point did Defendants notify or seek consent or authorization from Plaintiff to register the domain name for the Infringing Website, or to otherwise use Plaintiff's Photoscience Mark in any capacity.

10. From our review of this matter, given the uniqueness of the Photoscience Mark there is no plausible or justifiable reason why Defendants would register and utilize a domain name incorporating the Photoscience Mark, other than to improperly benefit from the goodwill Plaintiff has achieved in the Photoscience Mark.

11. Defendants' unauthorized usage of a mark identical to the Photoscience Mark as well as their usage of a website incorporating the Photoscience Mark in its name, and in connection with ultraviolet water treatment equipment replacement parts/products, is likely to cause confusion, mistake or deception as to the source, affiliation, connection or association of Defendants' products and services with those of Plaintiff.

12. Said confusion, deception and/or mistake includes, without limitation, confusion, deception and/or mistake as to any affiliation Defendants' products and websites have with Plaintiff's products.

13. Because the Photoscience Mark is unique and has been in the industry for 34 years, Defendants decision to use this trademark was deliberate and intended to confuse and deceive the public as to the source, origin and identity of their goods bearing the Infringing Mark and to injure Plaintiff and reap the benefit of Plaintiff's goodwill associated with the

Photoscience Mark, to cause consumer confusion, and to divert sales away from Plaintiff, and thus constitutes willful infringement of the Photoscience Mark.   It is highly unlikely that Defendants' decision to use the Photoscience Mark was an unintended accident.

14. On October 1, 2020 our law firm sent Defendants a Cease and Desist Letter (hereinafter the "October Letters") via email and mail advising Defendants of their infringement of the Photoscience Mark and of Plaintiff's intention to initiate litigation. Defendants failed to respond. The October Letters are attached hereto and incorporated herein as **Exhibit "4."**

15. On November 3, 2020, our law firm sent Defendants another Cease and Desist letter (hereinafter the "November Letters") via email and mail at another address of Defendants. The November Letters are attached hereto and incorporated herein as **Exhibit "5."**

16. One day later, on November 4, 2020, Defendant Meng responded to the November Letter via e-mail, stating that the Infringing Website would be "closed very soon." Defendant Meng's e-mail is attached hereto as **Exhibit "6."**   Defendant Meng's prompt response without any questions indicates that he concedes to liability.

17. Following Defendant Meng's email response, my partner Vikram Reddy (who is currently on a pre-scheduled vacation) informed Defendants that in order to avoid litigation a settlement agreement would be necessary. This communication was sent as an e-mail response to Defendant Meng's November 4, 2020 e-mail on the same date and is attached hereto and incorporated herein as **Exhibit "8."**

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

18. On November 6, 2020, having received no response from Defendant Meng, Vikram Reddy sent a follow-up e-mail, attached hereto and incorporated herein as **Exhibit "9."** There was no bounce back of this Nov. 6, 2020 email.

19. On November 10, 2020, again having received no response from Defendant Meng, Vikram Reddy sent a final follow-up e-mail advising Defendants that if no answer was received by November 11, 2020, Plaintiff would move forward with filing its complaint against Defendants. A copy of the complaint was attached to the e-mail. The November 10, 2020 e-mail is attached hereto and incorporated herein as **Exhibit "10."** There was no bounce back of this Nov. 10, 2020 email.

20. Defendant Meng's e-mail response to the November Letters demonstrates that that Defendant Meng and Defendant Pacific UV, of which Defendant Meng is principal, did in fact receive the November Letters and all subsequent communication that occurred, and therefore, had been made aware of their infringement. Thus, due process was met.

21. After waiting for approximately one month for a reply from Defendant Meng, on or about December 3, 2020, Plaintiff filed the instant Complaint [Dkt. 1] against the Defendants for Federal Trademark Infringement (15 U.S.C. § 1114); Federal Unfair Competition and False Designation of Origin (15 U.S.C. § 1125(a), (d)); Trademark Dilution (15 U.S.C. § 1125(c)); Unfair Competition Under California Business and Professions Code §§ 17200, et seq., and 17500; Trademark Infringement Under California State Common Law, Declaratory Judgment, and Accounting.

22. On or about December 17, 2020, pursuant to Fed. R. Civ. P. 4(e)(2)(A), Plaintiff,

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

1   through its process server, personally served a copy of the Summons and Complaint on

2   Defendant Pacific Ultraviolet.

3   23.   A copy of said Proof of Service was filed with the Court on January 8, 2021 [Dkt.

4   10], a true and correct copy of which is attached hereto and incorporated herein as **Exhibit**

5   **"11."**

6

7   24.   Based on the foregoing, no response was filed or has been filed by Defendant Pacific

8   Ultraviolet within the time period to do so as set forth in Fed. R. Civ. P. 12(a)(1)(A)(i).

9

10  25.   On January 18, 2021, Plaintiff filed a Request for Entry of Default against

11  Defendant Pacific UV and against Defendant Meng on the ground that Defendants failed to

12  appear or otherwise respond to the initial Complaint within the time prescribed by the

13  Federal Rules of Civil Procedure.

14

15  26.   The court clerk entered defaults against Defendant Pacific UV and Defendant Meng

16  respectively on January 19 and January 22, 2021 respectively. [Dkt. 20 and 23]

17

18  27.   Plaintiff has identified 40 separate products bearing the Infringing Mark, advertised

19  on Defendants' Infringing Website. Thus, there are 40 distinct instances of infringement of

20  Plaintiff's Photoscience Mark on Defendants' Infringing Website. These products fall

21  within two general product type categories: UV bulbs and UV Ballasts (See **Exhibit "13."**)

22  28.   Further, Plaintiff has also identified the infringing domain name

23  "photoscienceuv.com" which is registered in Defendants name. (See **Exhibit "7."**)

24  29.   Pursuant to 15 U.S.C. § 1117(c) Plaintiff is requesting $100,000 in statutory

25  damages per infringing mark per type (3), which equates to $100,000 x 3 = $300,000.

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

30.  Plaintiff is entitled to such damages in order to recover from the losses caused by Defendants' trademark infringing acts, which, among other things, have damaged Plaintiff's goodwill by introducing inferior quality products on the market bearing the Infringing Mark.

31.  Plaintiff has incurred in the following costs: court filing fee of $402 and process server's fee of $190, which a total permissible costs of $ 592 as set forth in the itemized costs summary attached hereto and incorporated herein as **Exhibit "14,"** which include fees incurred for, inter alia, complaint filing fee, service of process fees, and postage.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 26, 2021, in Irvine, California.

_____

Charles C.H. Wu, Declarant

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

J:\Photoscience.1233\Pac Ultraviolet\Pleadings\Default Judgement\20210224 Mot for Default Judgment - Pacific UV (D).docx